IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ED LEPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0780-K |
| | § | |
| FARMERS INSURANCE EXCHANGE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed February 15, 2010. Following its review and consideration of the motion, response, reply, surreply, response to surreply, summary judgment record, and the applicable law, the court rules that Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claim of FLSA retaliation is **dismissed with prejudice.**

### I.   Factual and Procedural Background

The majority of the facts described herein are presented in the summary judgment record as undisputed. However, where facts are disputed they are stated in the light most favorable to Plaintiff, the non-movant.

Plaintiff Ed Leps ("Leps") was employed by Defendant Farmers Insurance Exchange ("Farmers") as an adjuster assigned to Collin County and some surrounding areas. Leps was responsible for investigating and adjusting first party property insurance

1

claims filed by Farmers' insureds. Leps was a non-exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and thus earned one and one-half his regular hourly rate of pay for overtime hours he worked. Farmers required its adjusters to obtain pre-approval from their supervisors before working overtime. Farmers' policy was to grant advance approval provided there was a valid business need for the requested overtime.

It was a violation of Farmers' policy to work overtime without pre-approval. Leps' supervisor Brady Webster ("Webster") required Leps to submit an overtime approval form prior to working overtime. At the end of each work week, Leps and Farmers' other adjusters were required to submit their time cards for payment. In April 2007, Leps received a written counseling notice from his then-supervisor because he failed to obtain pre-approval for overtime. Although Leps believed that the warning was unjustified, he admits that Farmers viewed his conduct as a violation of the company's overtime policy.

Leps asserts that he made two complaints regarding Farmers' overtime pay practices that amounted to protected conduct under the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(a)(3). The first alleged complaint relates to a Regional Meeting he attended in San Antonio in February 2008. Approximately 32 adjusters, supervisors, and representatives of Farmers' upper management were present. The North Texas adjusters and their supervisors were managed by Dale von der Luft ("von der Luft"), who asked them for feedback on an employee opinion survey during the meeting.

Leps sensed that the adjusters were hesitant to provide candid responses to von der Luft's questions, and suggested that the adjusters might feel more comfortable expressing their views if management and the supervisors left the meeting.

The managers and supervisors did leave the room, and Leps states that the adjusters subsequently complained among themselves about inconsistencies in overtime procedures from supervisor to supervisor, that the overtime procedures were a hassle, that overtime was being disapproved, that they were afraid to submit overtime requests, and that they were being pressured to under-report their overtime hours. Although Leps recalls hearing these complaints, he confirms that he "didn't say a word" during the meeting. Afterward, Leps was approached by Webster and von der Luft, who both asked what had been said in the meeting. Leps responded that the information was "confidential" and did not relay the adjusters' complaints to them. However, Leps believes that Bob Mancino ("Mancino"), an employee of Farmers' home office, was taking notes regarding what was said in the meeting.

Leps states that after the February 2008 meeting, Farmers began to deny him opportunities to work overtime. When Leps followed up on previously-requested overtime for the week of February 8, his then-supervisor Bobby Nors ("Nors") responded that von der Luft said Leps was requesting too many hours for the claims worked, and asked that Leps cut the hours down some. In an email to Nors, Leps stated his concern that he did not want to short himself on overtime hours. Leps testified that he did cut

3

his hours in response to Nors' request. Also, after large storms that occurred in the Spring of 2008, Leps requested to work overtime on those storms. According to Leps, Webster and von der Luft did not give him the opportunity to earn overtime by working on those storms.

During the week of June 16, 2008, Leps was assigned to handle claims in Tarrant County. On June 18, Webster authorized Leps to work 25 hours of overtime that week. Webster also noted on the overtime approval form that as the end of the week approached, the form could be amended to add additional time. On Friday June 20, Leps sent Webster a form showing that thus far, he had worked 21 hours of overtime through Thursday of that week. Leps also placed a phone call to Webster that Friday morning to discuss additional expected overtime hours. Leps states that Webster called him back late Friday night to approve overtime to be worked Friday, Saturday and Sunday and also sent him an email at around 10:25 pm that stated "[o]vertime approved and authorized." Leps then worked Saturday and Sunday, apparently believing that the additional overtime had been approved by Webster.

On Saturday, Leps sent Webster another updated report showing that he had worked 31.75 overtime hours through Friday. He later submitted another report to Webster showing that he worked approximately 12 more hours of overtime on Saturday. The following Monday, Leps turned in his total hours for the week, including 51.5 hours of overtime. On June 28, Webster emailed Leps and said he was surprised at the amount

4

of overtime Leps had submitted for the week fo June 16, since he had only authorized 21 hours of overtime (Webster corrected this number to 25 hours in his deposition).

On July 10, 2008, Leps met with Webster and von der Luft, who told him he was terminated for working unauthorized overtime hours on June 21 and 22. The Performance Action Report given to Leps during the meeting also stated that in May 2008, he told Webster that he had worked overtime without reporting it. It appears from the summary judgment record that Webster had already decided to terminate Leps as of the evening of June 16, 2008, but that the Performance Action Report was revised later to show that Leps also worked overtime that was not approved over the weekend of June 21-22.

Leps alleges that Farmers retaliated against him because he requested payment for the overtime hours he worked on June 21-22, 2008, in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3). Farmers has moved for summary judgment on Leps' claim.

**II.     Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the

absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III.   Defendant's Motion for Summary Judgment

Leps contends that Farmers retaliated against him by discharging him after he had complained that Farmers was violating the FLSA.  The FLSA prohibits retaliation against an employee who files a complaint, initiates proceedings, or assists in the initiation of proceedings under the FLSA. 29 U.S.C. § 215(a)(3). To prove his retaliation claim, Leps must prove the same elements that are required under Title VII's three-step *McDonnell Douglas* test. *James v. MedicalControl, Inc.,* 29 F.Supp.2d 749, 752 (N.D.Tex.1998), *citing Hashop v. Rockwell Space Operations Co.,* 867 F.Supp. 1287, 1299 (S.D.Tex.1994)). The *McDonnell Douglas* test is a three-part analysis designed to determine the employer's motive behind the challenged employment decision. *Id. citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

6

First, Leps must prove a *prima facie* case of retaliation. If he successfully establishes his *prima facie* case, Farmers must rebut the presumption of retaliation by articulating a legitimate, nonretaliatory reason for Leps' discharge. If Farmers does so, Leps must produce evidence that Farmers' proffered reason for the discharge is merely a pretext, and that the real reason for his termination is an illegal retaliatory animus. *Id.* (*citing Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 n. 10 (1981)). To establish a *prima facie* case of retaliation for the exercise of a federally protected right, Leps must show that 1) he engaged in a protected activity; 2) he was subjected to an adverse employment action following his protected activity; and 3) there was a causal connection between the protected activity and the adverse action. *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 554 (5th Cir.1997) (applying the standard in a Title VII case).

Farmers argues that summary judgment is warranted because Leps cannot raise a genuine issue of material fact whether he engaged in protected activity, the first element of his *prima facie* case. Leps' contentions regarding his alleged protected conduct are that 1) he suggested that Farmers' management and supervisors leave the room during the February 2008 meeting so that the adjusters could speak more freely to each other, and thus was the "leader" of the group complaint (although he admits he personally said nothing in the meeting); and 2) in February 2008 he expressed concern to his then-supervisor Nors that he did not want to "cut [him]self short" on overtime hours.

7

Leps correctly states that informal internal complaints are sometimes sufficient to constitute protected conduct under the FLSA. *See Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 626 (5th Cir.2008) (holding that an informal, internal complaint constitutes protected activity under the FLSA because it better advances the statute's anti-retaliation goals). However, the Fifth Circuit clearly stated in *Hagan* that there are limits: "not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Id.* The complaint must "concern some violation of law." *Id.; see also Maynor v. Down Chemical Co.,* 671 F. Supp.2d 902, 923 (S.D. Tex. 2009).

Based upon the foregoing legal framework, the court finds that Leps' suggestion that management leave the room during the February 2008 adjusters' meeting does not rise to the level of protected activity. There are no facts in the record showing that Leps made his suggestion explicitly for the purpose of permitting the adjusters to complain about violations of the FLSA. Furthermore, Leps admits that he made no such complaints during that meeting. Leps' February 2008 statement to Nors also does not qualify as protected activity, in that he did not complain of any illegality by Farmers in its overtime practices. Although he was concerned that he not be shorted on overtime pay due him, this complaint more closely resembles a "grumbling" or "vague expression of discontent" as contemplated by the Fifth Circuit in *Hagan,* rather than an accusation of illegality. 529 F.3d at 626. The court further notes that Farmers paid Leps for all of the overtime hours he submitted. Leps has not set forth sufficient evidence to raise a

8

genuine issue of material fact whether he engaged in protected activity, which is a critical element of his *prima facie* case of retaliation, and therefore Farmers is entitled to summary judgment on Leps' retaliation claim.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's claim is hereby **dismissed with prejudice**. Judgment will be entered by separate document.

**SO ORDERED.**

Signed June 15th, 2010.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE